UNITED STATES DISTRICT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON DIVISION

*ELECTRONICALLY FILED*

| | |
|---|---|
| **NICHOLAS STOVER** )<br>　　3966 Lauren Way )<br>　　Lexington, Kentucky 40517 )<br> )<br>　　PLAINTIFF )<br> )<br>v. )<br> )<br> )<br>**AMAZON.COM, LLC** )<br>　　410 Terry Avenue North )<br>　　Seattle, Washington 98109 )<br> )<br>　　Serve: )<br>　　Kentucky Secretary of State )<br>　　Agent for AMAZON.COM, LLC )<br>　　700 Capital Avenue, Suite 152 )<br>　　Frankfort, KY 40601 )<br> )<br>and )<br> )<br>**AMZN WACS LLC** )<br>　　410 Terry Avenue North )<br>　　Seattle, Washington 98109 )<br> )<br>　　Serve: )<br>　　Kentucky Secretary of State )<br>　　Agent for AMZN WACS LLC )<br>　　700 Capital Avenue, Suite 152 )<br>　　Frankfort, KY 40601 )<br> )<br>and )<br> )<br> )<br> )<br> ) | **COMPLAINT AND DEMAND<br>FOR JURY TRIAL**<br><br><br><br>Civil Action No. _____ |

1

| | |
|---|---|
| **AMAZON.COM, INC.** | ) |
|    410 Terry Avenue North | ) |
|    Seattle, Washington 98109 | ) |
| | ) |
|       Serve: | ) |
|       Corporation Service Company | ) |
|       251 Little Falls Drive | ) |
|       Wilmington, DE 19808 | ) |
| | ) |
| | ) |
|    DEFENDANTS | ) |
| _____ | ) |

\* \* \* \* \* \* \* \*

Plaintiff NICHOLAS STOVER ("Mr. Stover"), for his complaint, by counsel, alleges as follows:

## INTRODUCTION

1. This is an action seeking remedy for disability discrimination in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Kentucky Civil Rights Act, KRS Chapter 344, arising from (1) the failure of defendants to provide reasonable accommodations for Mr. Stover's disability during his employment as Amazon Customer Services associate in Winchester, Kentucky, and (2) the wrongful termination of Mr. Stover's employment by defendants from that position on December 21, 2017, by reason of disability.

## JURISDICTION, VENUE AND PROCEDURAL REQUIREMENTS

2. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over this civil action, which brings claims under 42 U.S.C. § 12101 et seq. This Court has supplemental jurisdiction of the Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a), as the claims are so related to claims within the Court's original jurisdiction that they form part of the same case or controversy

2

under Article III of the United States Constitution.  Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to this action occurred within this judicial district, specifically, in Winchester, Clark County, Kentucky.

3. Plaintiff filed a timely charge of employment discrimination with the Equal Employment Opportunity Commission ("EEOC") and brings this action within ninety (90) days of the receipt of a Notice of Right To Sue, issued by the EEOC on November 20, 2018, and received by Mr. Stover on November 24, 2018, a true and accurate copy of which is attached hereto as Exhibit 1.

## PARTIES

4. Plaintiff, Mr. Stover, is a resident of Fayette County, Kentucky, and at all times relevant to this action was an employee of the Amazon Customer Service facility (the "call center") at 1919 Rolling Hills Lane, Winchester, Kentucky 40391.

5. Upon information and belief, Defendant AMAZON.COM, LLC is a foreign limited liability company organized in the state of Delaware and registered to do business in Kentucky during all times relevant to this action.  Throughout all events giving rise to this action, to and including the present, AMAZON.COM, LLC maintained its principal office at 410 Terry Avenue North, Seattle, Washington 98109.  On January 17, 2018, AMAZON.COM, LLC filed with the Kentucky Secretary of State its certificate of withdrawal as a foreign business entity in Kentucky and appointing the Kentucky Secretary of State as agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in the Commonwealth.  Upon information and belief, during all times relevant to the events herein, AMAZON.COM, LLC was owner and operator controlling the Amazon Customer Service facility at 1919 Rolling Hills Lane, Winchester, Kentucky 40391.

6. Upon information and belief, Defendant AMAZON.COM, INC. is a corporation organized in the state of Delaware. Throughout all events giving rise to this action, to and including the present, AMAZON.COM, INC. maintained its principal office at 410 Terry Avenue North, Seattle, Washington 98109. Upon information and belief, during all times relevant to the events herein, AMAZON.COM, INC. was owner and operator controlling the Amazon Customer Service facility at 1919 Rolling Hills Lane, Winchester, Kentucky 40391.

7. Upon information and belief, Defendant AMZN WACS LLC is a subsidiary or affiliate of AMAZON.COM, LLC and AMAZON.COM, INC. and was the employer of Nicholas Stover. AMZN WACS LLC is a foreign limited liability company organized in the state of Delaware and registered to do business in Kentucky during all times relevant to this action. AMZN WACS LLC was initially registered and authorized to transact business in Kentucky as a for-profit corporation, AMZN WACS, Inc., on July 6, 2011. The entity reported to the Kentucky Secretary of State its conversion to AMZN WACS LLC, a limited liability company, on October 7, 2015. On January 10, 2019, AMZN WACS LLC filed with the Kentucky Secretary of State its certificate of withdrawal as a foreign business entity in Kentucky, appointing the Kentucky Secretary of State as agent for service of process in any proceeding based on a cause of action arising during the time it was authorized to transact business in the Commonwealth, and stating its current address as 410 Terry Avenue North, Seattle, Washington 98109.

## FACTS

8. Upon information and belief, the three Amazon entities named as defendants herein (the "Amazon defendants" or "Amazon") in 2016 and 2017 were engaged in the business of operating the Winchester call center facility at 1919 Rolling Hills Lane in Clark County, Kentucky.

9.      AMAZON.COM, LLC is an "employer" within the meaning of the ADA and KRS Chapter 344.

10.     AMAZON.COM, INC. is an "employer" within the meaning of the ADA and KRS Chapter 344.

11.     AMZN WACS LLC is an "employer" within the meaning of the ADA and KRS Chapter 344.

12.     Mr. Stover is an "employee" and a "qualified individual" within the meaning of the ADA and KRS Chapter 344.

13.     On November 14, 2016, Mr. Stover began working at the Winchester call center, where approximately 900 people were employed.  As a "customer service associate," his duties involved answering telephones and assisting customers with such issues as providing refunds, information on items for sale, returns, exchanges, locating packages, and Amazon Web site issues.

14.     In the application process for that job, and during his job-training period, Mr. Stover proactively informed the Amazon defendants that he suffers from Crohn's disease, an inflammatory bowel condition that can be both painful and debilitating and that can lead to life-threatening complications.

15.     Episodes of symptoms of Crohn's disease can occur without warning and can require urgent response, including the immediate need for bathroom facilities.  The Amazon defendants were fully informed of this before they employed Mr. Stover.

16.     Nevertheless, prior to hiring Mr. Stover, the Amazon defendants did not inform him of their unyielding and inhuman policies governing bathroom access.

17.      Upon information and belief, the typical call center employee is present in the facility for nine hours per work day.  During that time, the employee will have three pre-designated

opportunities to leave his or her work station. Those are: (1) a 15-minute break between the start of the shift and the meal hour, (2) a one-hour break for a meal, and (3) a second 15-minute break between the meal hour and the end of the shift. Those three work-break events are scheduled by the Amazon defendants in advance for specific times for each employee and the employee is not free to alter that schedule.

18. In addition to those three daily breaks, the Amazon employee has permissible, unscheduled personal time he or she may take away from the work station. However, that unscheduled personal time has severe limits of no more than 10 minutes per shift and no more than 20 minutes *per week*. In other words, if the employee needs to use this personal time for a bathroom break, the employee is subject to disciplinary action if he or she is away for more than 10 minutes. Moreover, if the employee uses 10 minutes of personal time for a bathroom break on Monday and 10 minutes of personal time for a bathroom break on Tuesday, the employee is out of personal time options for Wednesday, Thursday and Friday. On those days, the employee's bathroom breaks must occur during the scheduled break times and meal time. Any more time taken beyond that on those three days will subject the employee to reprimand and other disciplinary possibilities.

19. Mr. Stover had many occasions when the exigencies of Crohn's disease commanded more bathroom time than he was allotted by the Amazon defendants' draconian restrictions. Because of this, a process of continuous reprimands of him by the defendants began. This persisted from the early days of his employment and endured until his eventual termination.

20. In March 2017, Mr. Stover and his physician, Dr. Stephen P. Schindler, of Colorectal Surgical and Gastroenterology Associates in Lexington, Ky., submitted a written request for an accommodation by the Amazon defendants. *Accommodation Form*, attached hereto as Exhibit 2.

21. This request was made on an Amazon "Accommodation Request" form and through a separate letter from Dr. Schindler. On the form, Amazon asked, "Does the employee have a medical situation (physical or mental impairment)?" Dr. Schindler checked the "Yes" box. *Id.* The form then asked, "Is the impairment long-term or permanent?" Dr. Schindler checked the "Permanent" box and wrote beside that, "Crohn's." *Id.*

22. On the form, Amazon also asked, "What is the impairment?" Dr. Schindler wrote, "Can have diarrhea. Can work full time but needs access to bathroom facility." *Id.*

23. On the form, Amazon also asked, "What general difficulties and restrictions, including nature and severity, is the employee experiencing as a result of the impairment?" Dr. Schindler replied, "Diarrhea, abdominal pain." *Id.*

24. On the form, Amazon also asked, "What limitation(s) is/are interfering with the job performance?" Dr. Schindler wrote, "Must have bathroom facility readily available." *Id.*

25. The defendants thereafter failed to interact with Mr. Stover in good faith, in violation of its duty under 29 C.F.R. § 1630.2(o)(3). The Amazon defendants did not provide Mr. Stover with any options for unscheduled or emergency bathroom breaks; they did not offer any work structure that would afford him bathroom time beyond that amount of time provided for all other employees; and they did not offer to move his work station to the proximity of a bathroom. His work station remained where it was before the request, a one- to two-minute walk from the nearest bathroom.

26. The defendants thus failed to provide reasonable accommodations for Mr. Stover. An officer then in the Human Resources office of the Winchester call center, Palak Patel, told Mr. Stover that if the center were to make accommodation for his bathroom needs, then "we'd have to do it for everyone." This is direct evidence of disability discrimination.

27. Mr. Stover at this time also was coping with a second difficulty arising from medication that he was taking to treat his Crohn's disease. During 2017, Mr. Stover was receiving infusions of the medicine ENTYVIO once every eight weeks. ENTYVIO is administered intravenously in the treatment of moderate to severe Crohn's disease when other Crohn's disease medications have not worked. Infusions take about 30 minutes to complete, and can leave a patient fatigued, nauseous and in pain, among other common side effects.

28. The infusions typically left Mr. Stover feeling ill for an entire day, making him nauseous and groggy. Yet, he would proceed to work his 2-to-11 p.m. shift at the Amazon call center.

29. Mr. Stover did not get to pick the days he would have ENTYVIO infusions. The infusion schedule was fixed by medical office personnel.

30. As a result, Mr. Stover sought a schedule accommodation from Amazon that would permit him to be off work on the rare days – roughly once every 56 days – when he would have to receive ENTYVIO infusions.

31. In April 2017, Mr. Stover submitted another Amazon human resources form – the third time he had submitted a request for a bathroom accommodation – and this time he also asked for a work schedule accommodation once every eight weeks. *Human Resources COF Form*, attached as Exhibit 3. On this April 2017 form, Amazon asked, "Describe how your injury/illness is impacting your ability to perform work." *Id.* Mr. Stover replied, "Impacts my work as I require more breaks for bathroom use. I will also need to miss work or take time off for flare ups and to receive medication through infusion." *Id.*

32. The defendants declined to grant Mr. Stover a schedule accommodation also.

33. Despite these difficulties, Mr. Stover was proving himself to be a valuable employee – and Amazon plainly valued him. On or about February 21, 2017, after he had been on the job just

three months, Mr. Stover earned a pay raise and a promotion to an employee team it calls "Search and Rescue."

34. The Search and Rescue team fields the most difficult customer problems and complaints. For example, if an Amazon customer had called the call center about a problem more than four times in 24 hours or emailed or messaged more than seven times in 48 hours, that customer was sent to Search and Rescue for help. In that position, Mr. Stover was among the employees who were tasked with dealing with some of the most difficult customer problems – and challenged to apply creative and dynamic problem-solving to often-intractable situations.

35. Yet, throughout the summer and fall of 2017, Mr. Stover endured constant reprimands. His supervisor during that time, Michelle Nemeth, accused Mr. Stover in writing of using "too much personal time" and later told him orally that he was engaging in "time theft" from Amazon because of excessive "bathroom breaks." This is direct evidence of disability discrimination.

36. In sum, Mr. Stover was open, honest and frank with the Amazon defendants before he was hired, fully informing them of his Crohn's disease. In return, the defendants concealed from him the call center's unbending break-time policy and its harsh 20-minutes-per-week personal time policy prior to employing him, and then used those policies that it hid from him to persistently reprimand and discipline him, and ultimately to terminate him.

37. On December 21, 2017, the defendants delivered an "involuntary termination" letter to Mr. Stover. It cites no grounds for the termination. However, his supervisor, Ms. Nemeth, told Mr. Stover that the reason for his firing was "time theft."

38. Harms suffered by Mr. Stover because of this termination include, but are not limited to, anxiety, distress, depression, severe headaches, other physical pain, and a general worsening of the symptoms of Chron's disease. With the loss of income and the loss of his medical coverage

caused by his termination, Mr. Stover permanently lost the ability to continue ENTYVIO treatments, because having been once stopped, the drug cannot be restarted. In the immediate aftermath, the loss of treatment with ENTYVIO caused his Chron's disease to worsen. Going forward, he is permanently deprived of a significant option in the long-term treatment of his disease.

## FIRST CAUSE OF ACTION
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN THE FORM OF BATHROOM BREAKS AS NECESSITATED BY DEFENDANT'S DISABILITY IN VIOLATION OF 42 U.S.C. § 12101 et seq.

39. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 39.

40. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions. 42 U.S.C. § 12102(1)-(2).

41. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

42. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability.

43. Mr. Stover and his physician repeatedly informed defendants of Mr. Stover's disability and repeatedly requested formally and in writing a reasonable accommodation to permit Mr. Stover to have bathroom facility access as required by his disability.

44. The requested accommodation – time for Mr. Stover to use bathroom facilities but only to the extent that his disability required it, without fear of reprimand or other disciplinary action –

would have enabled Mr. Stover to work more productively, to the benefit of defendants, and providing such time would not have posed an undue hardship on Amazon.

45. The defendants failed to provide any accommodation in the form of permission for unscheduled bathroom breaks as necessitated by his disease, in the form of relocation of his work space to the proximity of a bathroom, or any other form of accommodation.

46. Accordingly, the defendants harmed Mr. Stover by failing to provide him with a reasonable accommodation for bathroom breaks, all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

47. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

### SECOND CAUSE OF ACTION
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
### IN THE FORM OF SCHEDULING ADJUSTMENT ONCE EVERY 56 DAYS
### IN VIOLATION OF 42 U.S.C. § 12101 et seq.

48. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 48.

49. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions. 42 U.S.C. 12102(1)-(2).

50. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

51. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability.

52. Mr. Stover and his physician formally and in writing requested accommodation in his shift scheduling to permit Mr. Stover to receive infusions of ENTYVIO one day every eight weeks without having to then go to work at the call center in an ill and debilitated condition.

53. The requested accommodation – a minor scheduling adjustment once approximately every 56 days to permit Mr. Stover to receive ENTYVIO infusions, without fear of reprimand or other disciplinary action and without being required to work while ill – would have enabled Mr. Stover to work more productively, to the benefit of defendants, and would not have posed an undue hardship on Amazon.

54. The defendants failed to provide any accommodation in the form of altered work schedule to accommodate such infusions.

55. Accordingly, the defendants harmed Mr. Stover by failing to provide him with a reasonable accommodation in his work shift assignments, all in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

56. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

### THIRD CAUSE OF ACTION
### WRONGFUL TERMINATION BY REASON OF DISABILITY DISCRIMINATION IN VIOLATION OF 42 U.S.C. § 12101 et seq.

57. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 57.

58. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions. 42 U.S.C. 12102(1)-(2).

59. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

60. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability, even though defendants were fully aware of the cause of Mr. Stover's absences from his work station.

61. Ultimately, defendants terminated Mr. Stover on December 21, 2017, telling him that his firing was because of "time theft," when in fact defendants knew Mr. Stover had a disability and no control over his needs for bathroom time and periodic infusions of medication.  Accordingly, the defendants harmed Mr. Stover by wrongfully terminating him by reason of disability discrimination, all in violation of the Americans with Disabilities Act, 42 § U.S.C. § 12101 et seq.

62. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

## FOURTH CAUSE OF ACTION
## FAILURE TO PROVIDE A REASONABLE ACCOMMODATION IN THE FORM OF BATHROOM BREAKS AS NECESSITATED BY DEFENDANT'S DISABILITY IN VIOLATION OF KRS CHAPTER 344

63. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 63.

64. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions.  KRS 344.010(4)(a).

65. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his

quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

66. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability.

67. Mr. Stover and his physician repeatedly informed defendants of Mr. Stover's disability and repeatedly requested formally and in writing a reasonable accommodation to permit Mr. Stover to have bathroom facility access as required by his disability.

68. The requested accommodation – time for Mr. Stover to use bathroom facilities but only to the extent that his disability required it, without fear of reprimand or other disciplinary action – would have enabled Mr. Stover to work more productively, to the benefit of defendants, and providing such time would not have posed an undue hardship on Amazon.

69. The defendants failed to provide any accommodation in the form of permission for unscheduled bathroom breaks as necessitated by his disease, in the form of relocation of his work space to the proximity of a bathroom, or any other form of accommodation.

70. Accordingly, the defendants harmed Mr. Stover by failing to provide him with a reasonable accommodation for bathroom breaks, all in violation of the Kentucky Civil Rights Act, KRS Chapter 344.

71. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

### FIFTH CAUSE OF ACTION
### FAILURE TO PROVIDE A REASONABLE ACCOMMODATION
### IN THE FORM OF SCHEDULING ADJUSTMENT ONCE EVERY 56 DAYS
### IN VIOLATION OF KRS CHAPTER 344

72. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 72.

73. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions. KRS 344.010(4)(a).

74. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

75. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability.

76. Mr. Stover and his physician formally and in writing requested accommodation in his shift scheduling to permit Mr. Stover to receive infusions of ENTYVIO one day every eight weeks without having to then go to work at the call center in an ill and debilitated condition.

77. The requested accommodation – a minor scheduling adjustment once approximately every 56 days to permit Mr. Stover to receive ENTYVIO infusions, without fear of reprimand or other disciplinary action and without being required to work while ill – would have enabled Mr. Stover to work more productively, to the benefit of defendants, and would not have posed an undue hardship on Amazon.

78. The defendants failed to provide any accommodation in the form of altered work schedule to accommodate such infusions, all in violation of the Kentucky Civil Rights Act, KRS Chapter 344.

79. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

## SIXTH CAUSE OF ACTION
## WRONGFUL TERMINATION BY REASON OF DISABILITY DISCRIMINATION
## IN VIOLATION OF KRS CHAPTER 344

80. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 80.

81. Mr. Stover, as a Crohn's disease patient, has a physical impairment that substantially limits one or more major life activities, including but not limited to the operation of digestive and bowel functions. KRS 344.010(4)(a).

82. Mr. Stover was qualified for the position he held and was able to perform its essential functions, with or without a reasonable accommodation, as evidenced by, among other things, his quick pay raise and promotion to challenging and sensitive work on the Search and Rescue team, and his success at his job.

83. Mr. Stover was repeatedly and persistently subjected to reprimands and other job action solely because of his disability, even though defendants were fully aware of the cause of Mr. Stover's absences from his work station.

84. Ultimately, defendants terminated Mr. Stover on December 21, 2017, telling him that his firing was because of "time theft," when in fact defendants knew Mr. Stover had a disability and no control over his needs for bathroom time and periodic infusions of medication.

85. Accordingly, the defendants harmed Mr. Stover by wrongfully terminating him by reason of disability discrimination, all in violation of the Kentucky Civil Rights Act, KRS Chapter 344.

86. As a result of these violations, Mr. Stover was damaged in an amount to be determined by a jury.

RECOVERY OF ATTORNEYS' FEES

87. All preceding paragraphs of this complaint are incorporated here as if fully set forth in this paragraph 87.

88. Mr. Stover is entitled to recover his attorneys' fees and costs pursuant to the provisions of the ADA, 42 U.S.C. § 12205, and the Kentucky Civil Rights Act, KRS 344.450.

JURY TRIAL DEMAND

The plaintiff hereby demands a trial by jury on all issues so triable.

PRAYER FOR RELIEF

WHEREAS, Plaintiff Nicholas Stover prays that this Court enter judgment against the defendants AMAZON.COM, LLC , AMZN WACS LLC and AMAZON.COM, Inc., on all claims asserted herein and ordering the defendants to pay Mr. Stover as follows:

(1) Compensatory damages of at least $3 million, including compensation for, among other injury, lost past and future lost wages and the significant amplification of the symptoms of his disease due to the stress inflicted upon him while he occupied his job and due to his ultimate termination, including but not limited to anxiety, depression, weight loss, migraine headaches, and the permanent medical inability to resume certain medications that help control his disease:

(2) Punitive damages such as a jury may award to punish and deter such future unlawful conduct;

(3) Costs, including reasonable attorneys' fees;

(4) All statutory remedies provided by the ADA and KRS Chapter 344;

(5) Statutory interest on all monetary damage awards, verdicts or judgments; and

(6) All other such relief as the Court may deem proper.

Respectfully submitted,

/s James L. Adams
Bart L. Greenwald
James L. Adams
Duncan Galloway Egan Greenwald, PLLC
9625 Ormsby Station Road
Louisville, KY 40223
bgreenwald@dgeglaw.com
jadams@dgeglaw.com
Office (502) 614-6970
Fax (502) 614-6980
*Counsel for Plaintiff Nicholas Stover*