UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

NICHOLAS STOVER,               )
                               )
        Plaintiff,             )
                               )          Case No.
v.                             )          5:19-cv-054-JMH
                               )
AMAZON.COM, LLC, *et al.*,     )          **MEMORANDUM OPINION**
                               )              **AND ORDER**
        Defendants.            )

                          ***

This matter comes before the Court on Defendants Amazon.com, LLC, AMZN WACS, LLC, and Amazon.com, Inc.'s (collectively "Amazon") Bill of Costs [DE 85] and Corrected Bill of Costs [DE 86] and Plaintiff Nicholas Stover's Response to Defendants' Bill of Costs [DE 87] arguing that the Court should either excuse him from paying costs in the total amount of $4,391.11 due to his alleged indigency or reduce certain costs that he claims are not fully explained. The Court will consider Stover's arguments in turn.

### I. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 54(d)(1), "Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d)(1) "creates a presumption in favor of awarding costs, but allows denial of costs at the discretion of the trial court." *See Singleton v. Smith*, 241 F.3d

534, 539 (6th Cir. 2001) (citation omitted). "The party objecting to the taxation bears the burden of persuading the Court that taxation is improper." *See Roll v. Bowling Green Metal Forming, LLC.*, No 1:09-CV-00081-TBR, 2010 WL 3069106, at *1 (W.D. Ky. Aug. 4, 2010) (citing *BDT Prods., Inc. v. Lexmark Int'l, Inc.*, 405 F.3d 415, 420 (6th Cir. 2005)). "'In order to award costs to a prevailing party, the court must determine that the expenses are allowable and that the amounts are reasonable and necessary.'" *Banks v. Bosch Rexroth Corp.*, 611 F. App'x 858, 860 (6th Cir. 2015) (quoting *Baker v. First Tennessee Bank Nat. Ass'n,* 142 F.3d 431, 1998 WL 136560 at *2 (6th Cir.1998) (table)). "[I]ndigency . . . does not 'provide an automatic bases for denying taxation of costs against an unsuccessful litigant.'" *Id.* (quoting *Singleton*, 241 F.3d at 538). "The ability of the winning party to pay his own costs is irrelevant." *Id.* (citing *White v. White, Inc.*, 786 F.2d 728, 730 (6th Cir. 1986)).‼

## II. INDIGENCY

According to Stover's Affidavit [DE 87-1] attached to his Response [DE 87], he is unemployed because his former employer, Bumblebee Team Sports, closed during the still ongoing COVID-19 pandemic, and he was laid off. [DE 87-1, at 1]. If Bumblebee Teams Sports were to reopen, Stover claims he would be unable to return as an employee because his "immune system is compromised by [his] disabling Crohn's disease . . . ." *Id*. Stover asserts that his

only income is the $180.00 he receives per week in unemployment insurance payments, he and his wife have no money in savings, and he owns no real estate. *Id*. at 2. Stover further asserts that his monthly medication expenses are "approximately $200-$230," and his debt at the time of his Response [DE 87] was "$35,678 in student loans and bills that have gone to collections." *Id*. However, Stover is not alone. His wife has "gross earning[s] per week of about $250-$300," and she "receives about $4,000 every quarter from a trust of her grandmother, or about $16,000 per year, reduced by income taxes [they] pay on that amount." *Id*.

Regarding Stover's own income from his unemployment insurance, Amazon contends his alleged amount of $180.00 "conflicts with the Pandemic Unemployment Assistance (PUA) under the CARES Act, including the $600.00 weekly installments for unemployment insurance recipients . . . *in addition* to the base payments." [DE 89, at 2 (citation omitted)]. Amazon argues, "Mr. Stover omits this amount and has not explained why a portion of this money cannot be used to pay the costs incurred to Defendants by Mr. Stover's suit." *Id*. This contention is unavailing. There is no evidence that Stover receives any additional money for his unemployment insurance. The mere existence of such relief for unemployment insurance recipients does not mean Stover, in fact, receives it, and there have been well known issues with

unemployment insurance recipients being able to receive such relief, particularly in Kentucky.

Regardless of any additional income for Stover's unemployment insurance, the Court agrees with Amazon that he does not qualify as indigent for the purpose of paying costs in this matter. In addition to Stover's $180.00 for his unemployment insurance payments and his wife's income from her job and her quarterly payments from her grandmother's trust, Stover's wife inherited "a 2013 Infinity" car that Stover estimates "is worth about $13,000." [DE 87-1, at 2]. Stover's wife also has a second car she is making payments on. *Id.* While the Court agrees with Stover that his wife "needs a car to get to work," *id.*, it does not appear they require two cars because Stover is not working. If Stover and his wife are not able to pay the costs in this matter with their combined income, they have the option of selling the $13,000.00 Infinity to pay the costs of $4,391.11 and profit approximately $8,608.89.

Furthermore, aside from Stover's previously mentioned medication expenses, the bills that have already gone to collections, and Stover's wife's car payment, it does not appear Stover has any other expenses because "[t]he house where [he and his wife live] belongs to [his] wife's grandmother, who allows [them] to stay there rent-free." *Id.* So, in sum, Stover curiously requests to not pay the costs in this matter despite having an income from unemployment insurance payments, living rent-free with

a wife who receives $4,000.00 quarterly from a trust and has an income that is uninterrupted by the ongoing pandemic, and owning a $13,000.00 car Stover and his wife do not need that would more than pay the costs. For the foregoing reasons, the Court will deny this request and consider Stover's alternative argument asking the Court to reduce Amazon's requested amount of costs.

### III. AMAZON'S ALLEGED FAILURE TO EXPLAIN COSTS

Stover argues the Court should reduce the costs of deposition transcripts and certain medical records because they are not adequately explained. [DE 87, at 3-6].

### A. DEPOSITION TRANSCRIPTS

Regarding the costs of deposition transcripts, Stover asks for a reduction because three of the transcripts from one court reporter have a cost of $5.25 per page, whereas the other transcripts from another court reporter have what Stover refers to as a "reasonable rate of approximately $2.03 per page." [DE 87, at 3]. "Ordinarily, the costs of taking and transcribing depositions reasonably necessary for the litigation are allowed to the prevailing party." *Sales v. Marshall,* 873 F.2d 115, 120 (6th Cir. 1989). "The burden of initially identifying which particular deposition costs are unreasonable and unnecessary is on the party challenging the award of costs." *Vistein v. Am. Registry of Radiologic Technologists*, No. 1:05-cv-2441, 2010 WL 918081, at *6 (N.D. Ohio Mar. 10, 2010) (citing *White and White Inc. v. American*

*Hosp. Supply Corp.,* 786 F.2d 728, 732 (6th Cir. 1986)). Here, Stover argues that a reduction in costs is necessary because Amazon fails to establish that the disparity in the per page cost was necessary and reasonable. *Id.* at 3-5. To support this argument, Stover cites *Pogue v. Northwestern Mutual Life Insurance Co.*, No. 3:14-cv-598, 2019 WL 2814643, at *3 (W.D. Ky. July 2, 2019) and *Vistein,* 2010 WL 918081, at *7.

In *Pogue*, there was only one court reporting company, Veritext, used for each of the deposition transcripts. 2019 WL 2814643, at *3. Two of the deposition transcripts cost $3.75 per page, and the other two deposition transcripts cost $4.25 per page. *Id.* For the two depositions with a $4.25 per page rate, "the invoice indicates Veritext charged a $0.50 expert witness surcharge per page . . . ." *Id.* The *Pogue* Court found the defendants did not explain why the two depositions with $4.25 per page rate cost $0.50 more per page than the other two depositions "when a surcharge was already included on the invoice," and reduced the $4.25 per page depositions to $3.75 per page because it appeared to be a duplicate charge for the $0.50 expert witness surcharge that was already on the invoice. *Id.* In sum, while the *Pogue* Court reduced the per page rate of the deposition transcripts to $3.75 due to the duplicate charge, the total for the $4.25 per page transcripts remained the same due to the base rate of $3.75 per page plus the additional $0.50 per page expert witness surcharge.

6

In *Vistein*, the United States District Court for the Northern District of Ohio reduced the requested costs for deposition transcripts because the defendant did not explain why one transcript cost $6.35 per page, but the others cost $2.90 per page. 2010 WL 918081, at *7.

In the present case, Stover has not shown that the $5.25 per page rate is unreasonable. As Stover points out, the deposition transcripts with the higher per page rate were transcribed by a different court reporter, which sets this case apart from *Pogue* and *Vistein*. Different court reporters charge different rates, and one court reporter charging a higher rate than another is not inherently unreasonable. Aside from the "necessity" of the $5.25 per page rate, Stover does not argue the transcripts were unnecessary. [DE 87, at 3-5].

## B. MEDICAL RECORDS

Stover argues Amazon fails to show the $231.16 they seek pursuant to an invoice from CIOX Health concerning St. Joseph Hospital is either reasonable or necessary because Amazon "does not state what service the Defendants received." *Id*. at 5. Stover further asserts that "[i]f the billing is in fact for copies of medical records as Defendants assert, neither the invoice nor the Defendants' Itemization, 86-1, states . . . how many page of records were provided via CIOX." *Id*. However, Amazon contends there is no ambiguity regarding the $231.16 invoice because the

7

"supporting documentation clearly demonstrates that the invoice in the amount of $231.16 was regarding 'NICHOLAS STOVER' and 'ST JOSEPH HOSPITAL' and that 'records are being held until payment is received.'" [DE 89, at 4 (citing [DE 86-11])]. Amazon further asserts that Stover had notice of what the records in question are because "the records came in response to a June 27, 2019, subpoena served by Defendants . . . ." [DE 89, at 4].

After reviewing the $231.16 Invoice [DE 86-11], the Court does not find it difficult to determine that it is regarding records from St. Joseph Hospital. While neither the Invoice [DE 86-11] nor the Itemization of Costs [DE 86-1] show how many pages of records were provided by CIOX Health, Stover does not cite anything requiring such a disclosure. Therefore, Stover has not met his burden of persuading the Court that the $231.16 Invoice [DE 86-11] is improper.

Lastly, Stover argues, "Defendants also seek reimbursement of $31 for the copying of 31 pages of medical records at a price of $1.00 per page. DN 86-10. A cost of $1 per page for copying is excessive and should be denied." [DE 87, at 5]. Stover posits that a cost of $0.15 per page for copying is the reasonable rate, which would reduce the requested $31 cost to $4.65. *See id.* (citing *Hyland v. HomeServices of America, Inc.,* 2013 WL 1894513 at *2 (W.D. Ky. May 7, 2013); *U.S. Commodity Futures Trading Comm'n v. WeCorp, Inc.,* 878 F.Supp.2d 1160, 1164 (D. Haw. 2012); *Porter v.*

8

*McDonough,* 2011 WL 821181, at *3 (D. Minn. Mar. 2, 2011)). Stover's argument is based solely on the fact that other courts have found $0.15 per page to be a reasonable rate for copying.

However, as Amazon correctly asserts, Stover has failed to cite to any case law showing a $1.00 per page rate to be excessive or unreasonable. [DE 89, at 4]. Just because a lower rate is reasonable does not mean a higher rate is necessarily unreasonable, and the burden is on Stover to show that. Since Stover has failed to do so, the Court will deny his request for a reduction of the $31.00 cost for copying. For the reasons stated herein,

**IT IS ORDERED** as follows:

(1) Plaintiff Nicholas Stover's Response to Defendants' Bill of Costs [DE 87] arguing that the Court should either excuse him from paying costs in the total amount of $4,391.11 or reduce certain costs is **DENIED**; and

(2) Defendants Amazon.com, LLC, AMZN WACS, LLC, and Amazon.com, Inc.'s Bill of Costs [DE 85] and Corrected Bill of Costs [DE 86] shall be submitted to the Clerk of Court for review.

This 30th day of March, 2021.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge