NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0020n.06

Case No. 21-5421

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 10, 2022
DEBORAH S. HUNT, Clerk

| | |
|---|---|
| NICHOLAS STOVER,<br><br>Plaintiff-Appellant,<br><br>v.<br><br>AMAZON.COM, LLC, AMZN WACS, LLC, and AMAZON.COM, INC.,<br><br>Defendants-Appellees. | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF KENTUCKY |

Before: GIBBONS, READLER, and MURPHY, Circuit Judges.

**CHAD A. READLER, Circuit Judge.** For roughly a year, Amazon employed Nicholas Stover as a call center customer service representative. After numerous incidents, the company terminated Stover's employment. Stover, who has a chronic inflammatory bowel disease known as Crohn's disease, believed that his relationship with the company soured because of this condition. So he sued various Amazon affiliates and subsidiaries (for simplicity, we refer to them collectively as Amazon), alleging that the company violated the Americans with Disabilities Act (ADA) and the Kentucky Civil Rights Act (KCRA). The district court granted summary judgment for Amazon. Because the record amply supports the summary judgment grant, we affirm.

**I.**

Nicholas Stover joined one of Amazon's Kentucky-based call centers as a seasonal customer service representative. The position required Stover to troubleshoot with Amazon customers over the phone, duties Amazon tracked by requiring its employees to maintain an "aux" status. That status would reflect a representative's current activity, such as being on a call, attending a meeting, or going on break. With respect to the latter activity, Amazon policy afforded Stover various types of time off and required that, when he took a break, he needed to log it via his aux status.

Eleven days into his new job, Stover disclosed to an Amazon human resources associate that he had a "chronic illness" that required him to "frequently visit the restroom" without notice. As part of that disclosure, Stover asked whether he could have "additional break time to . . . visit the restroom, as needed." Viewing Stover's inquiry as a possible ADA accommodations request, Amazon gave Stover various forms to complete to allow Amazon's Leave of Absence Accommodations (LOAA) team to obtain necessary information (such as medical confirmation from Stover's physician) to resolve the request. When Amazon did not hear back from Stover, it administratively closed his case, with the understanding that Stover could reopen his request by providing the needed information.

After several months as a seasonal employee, Stover was hired on a non-temporary basis and later assigned to the "Search and Rescue Team," which handles difficult, unresolved calls from customers. Around that same time, Stover visited his gastroenterologist and subsequently opted to reopen his accommodations inquiry with Amazon. Amazon provided Stover with copies of the needed paperwork, which Stover eventually completed. In one of the completed forms, Stover disclosed that he had a gastrointestinal issue that "require[d] more breaks for bathroom use" and

necessitated him "miss[ing] work or tak[ing] time off" to attend to his condition. Stover's gastroenterologist submitted additional information. In language that he would later describe as open to interpretation, the gastroenterologist indicated that Stover needed (as an accommodation) to have a bathroom facility "readily available" to him.

Uncertain as to the exact nature of Stover's request, an LOAA representative asked Stover for further clarification. Stover specified that his work hours should be reduced from 40 to 32 hours per week, and that he needed the ability to "use the restroom whenever he has an episode." The LOAA representative asked Stover to provide supporting documentation from his health care provider. But Stover did not do so, even after LOAA followed up on its earlier request. So LOAA again administratively closed Stover's request for an accommodation until it received more specific information. Fed up with being "told no" on "multiple occasions," Stover decided he "was done" with seeking accommodations.

Stover's tenure took a turn for the worse with the arrival of his new boss, Michelle Nemeth. Stover felt that he and his new supervisor had a "personal" conflict, with Nemeth maintaining an "overall malaise" toward him. Nemeth's view of Stover, on the other hand, seemingly was shaped by Stover's missteps in his customer service role. Stover received some of the poorest customer response ratings amongst his colleagues, resulting in Nemeth warning him in writing about his performance. Stover refused to sign the written warning. But he did sign his name to an email about corporate organizational changes that he sent to Nemeth shortly after the warning. And he did not mince words. He warned Nemeth that he was "pissed" about how the company was treating its "most influential employee," and that she was about to "find [her]self fac[ing] . . . a shit storm that [he would] funnel larger and larger."

That brewing storm, not surprisingly, did little to resolve Stover's performance issues. Nemeth discovered that Stover had been confrontational to customers even to the point of hanging up on them, resulting in another written warning. A few weeks later, Nemeth emailed Stover asking him to "be mindful of [his] aux times," after discovering he was repeatedly taking excess break and personal time. Stover blamed the issue on a bout of food poisoning. A few weeks after that, Nemeth warned Stover that he had missed more customer calls than anyone on her team. Stover blamed "system issues" with his computer, which Nemeth tried to resolve by replacing Stover's machine. Not long thereafter, Nemeth formally counseled Stover about his excessive breaks. Stover attributed the issue to his Crohn's disease, prompting Nemeth to suggest that he make an accommodations request with human resources. Stover, however, expressed no interest in doing so.

As these problems mounted, Stover emailed Nemeth to fault his computer "system" for incorrectly logging his break times. As she dug into the issue, Nemeth discovered a pattern of Stover switching his aux status to a setting that would functionally route calls received at the end of his shift to others. Stover admitted to the practice and signed a form acknowledging as much. (Stover would later testify that he was "[f]or the most part" "helping other employees" during the times in question, but he never directly disputes his contemporaneous admission to Nemeth.) Nemeth viewed Stover's behavior as "egregious." Fed up, Nemeth, in tandem with other Amazon managers, opted to terminate Stover's employment.

Stover eventually sued Amazon for various ADA and KCRA violations. The essence of his complaint was that Amazon refused to allow Stover to deviate from the company's "draconian" break time policy, despite knowing about Stover's gastrointestinal condition, ultimately resulting in Stover's termination. Stover alleged both reasonable accommodation and wrongful termination

claims under the ADA and the KCRA. Following discovery, Amazon moved for summary judgment, arguing, among other things, that (1) Stover's ADA failure to accommodate claims were time-barred; (2) Stover's condition did not constitute a disability under the ADA or KCRA; and (3) Stover's failure to accommodate and termination claims otherwise failed on the merits. Agreeing with both the first and second arguments, the district court granted summary judgment to Amazon. Stover filed a Fed. R. Civ. P. 59(e) motion seeking to alter or amend the summary judgment order, invoking grounds that largely echoed his earlier arguments at summary judgment. Within 30 days of the district court's denial of that motion, Stover filed this appeal.

**II.**

As a threshold procedural matter, Amazon argues that we lack jurisdiction due to an untimely appeal. By rule, a notice of appeal must be filed "within 30 days after entry of the judgment or order being appealed from." Fed. R. App. P. 4(a)(1)(A). But that clock resets when a motion to alter or amend the judgment is filed in accordance with Fed. R. Civ. P. 59(e), so long as the motion is filed within 28 days of the entry of that judgment. *See* Fed. R. App. P. 4(a)(4)(A)(iv); *Lexon Ins. Co. v. Naser*, 781 F.3d 335, 337–38 (6th Cir. 2015). If so, an appeal is timely if filed within 30 days of the resolution of the Rule 59(e) motion. *See Lipman v. Budish*, 974 F.3d 726, 739 (6th Cir. 2020). And in that case, the Rule 59(e) ruling "merges with the prior determination, so that the reviewing court takes up only one judgment." *Banister v. Davis*, 140 S. Ct. 1698, 1703 (2020).

Stover filed his Rule 59(e) motion within 28 days of the district court's summary judgment order. And he filed his notice of appeal within 30 days of the order resolving his motion. Facially, that would seem to end matters. But Amazon maintains that Stover's Rule 59(e) motion did not properly toll his appeal time because the motion failed to invoke grounds customarily raised in a

motion to alter or amend. *See Exxon Shipping Co. v. Baker*, 554 U.S. 471, 485 n.5 (2008) ("Rule 59(e) . . . may not be used to relitigate old matters, or to raise arguments . . . that could have been raised prior to the entry of judgment." (citations and quotations omitted)). To be sure, those shortcomings were a fair basis for the district court to deny Stover's motion. But Amazon conflates the high bar required for a district court to amend or alter its judgment under Rule 59(e) with what is required to reset the appeals clock. On that latter issue, we have imposed a far lower bar, merely requiring the motion to "reasonably specif[y]" the grounds for the motion. *See Intera Corp. v. Henderson*, 428 F.3d 605, 613–14 (6th Cir. 2005) (holding that a Rule 59(e) motion containing a single "concise citation" sufficed to toll the appeals period). Dismissal may be proper when the underlying Rule 59(e) motion is "frivolous" or wholly "lacking in particularity." *Wainwright v. Sec'y, Dep't of Corr.*, 537 F.3d 1282, 1285 (11th Cir. 2007) (per curiam); *see, e.g.*, *Seifert v. Dominick's Finer Foods, Inc.*, 444 F. App'x 898, 900 (7th Cir. 2009) (order) (describing a "fatally flawed" 59(e) motion that did not "articulate a single argument"); *Feldberg v. Quechee Lakes Corp.*, 463 F.3d 195, 197 (2d Cir. 2006) (per curiam) (describing a motion that "failed to give any indication of the grounds on which it was based"). Stover's far more robust Rule 59(e) motion, however, was not so flawed. We are thus satisfied of our jurisdiction.

**III.**

Moving ahead to the merits, all of Stover's issues on appeal turn on whether summary judgment for Amazon was warranted as to Stover's three ADA claims and his three parallel KCRA claims. Because there is no substantive distinction between those two types of claims for purposes of the issues discussed in this opinion, our references to the ADA apply equally to the KCRA. *See Bryson v. Regis Corp.*, 498 F.3d 561, 574 (6th Cir. 2007) (holding that the KCRA is generally interpreted consistent with ADA standards).

We review de novo the district court's award of summary judgment, viewing the facts and all reasonable factual inferences in Stover's favor. *Groening v. Glen Lake Cmty. Schs.*, 884 F.3d 626, 630 (6th Cir. 2018). Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Because "[w]e review judgments, not opinions," *Stewart v. IHT Ins. Agency Grp., LLC*, 990 F.3d 455, 457 (6th Cir. 2021), we may affirm the grant of summary judgment on any ground supported by the record, even if that differs from the reasoning of the district court, *see Pfeil v. State St. Bank & Tr. Co.*, 806 F.3d 377, 384 (6th Cir. 2015).

*Failure to Accommodate.* Four of Stover's six claims invoke a failure to accommodate. A reasonable accommodation claim stems from the ADA's prohibition against disability discrimination. *Kleiber v. Honda of Am. Mfg., Inc.*, 485 F.3d 862, 868 (6th Cir. 2007). As relevant here, the ADA prohibits an employer from failing to make "reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability . . . unless such covered entity can demonstrate that the accommodation would impose an undue hardship on the operation of the business of such covered entity." 42 U.S.C. § 12112(b)(5)(A). To establish a prima facie case of a failure to accommodate, Stover must show: (1) he is disabled; (2) he is otherwise qualified for the position, with or without reasonable accommodation; (3) Amazon knew or had reason to know about his disability; (4) he requested a reasonable accommodation; and (5) Amazon failed to provide the necessary accommodation. *Brumley v. United Parcel Serv., Inc.*, 909 F.3d 834, 839 (6th Cir. 2018). While much of the parties' briefing focuses on the first and third elements, we need only address Amazon's argument that Stover's accommodations claims fail on the fourth prong: whether he requested a reasonable accommodation.

Stover identifies two types of accommodations: (1) to have "bathroom facility access as required by his disability"; and (2) to adjust his schedule "once approximately every 56 days to permit [him] to receive . . . infusions" with a biologic agent to treat his condition. Starting with bathroom access, the record indicates Stover failed to request a reasonable accommodation. His initial requests—proposals like "more breaks" or a "readily available" restroom—were, even by his own gastroenterologist's admission, lacking in specificity, so much so that they were tantamount to failing to make any accommodation request whatsoever. An employee, after all, must "reasonably inform" an employer about the nature of the requested accommodation, thereby putting the employer on notice of whether and what type of accommodation might be appropriate. *Cassidy v. Detroit Edison Co.*, 138 F.3d 629, 635 (6th Cir. 1998). Stover's most precise request came when he told the LOAA, in response to Amazon's attempt for clarification, that he needed a reduced work schedule and to use the restroom whenever he had an episode. Stover did not follow up, however, with supporting medical documentation to give Amazon fair notice of his needs. Instead, he repeatedly disclaimed any interest in seeking an accommodation. Stover's failures in this regard rendered his bathroom-accommodations claims subject to summary judgment. *Id.*; *Kennedy v. Superior Printing Co*., 215 F.3d 650, 656 (6th Cir. 2000) (holding that an employer is entitled to ask an employee to provide "medical documentation sufficient to prove that he had a condition requiring accommodation").

Much of the same can be said for Stover's scheduling adjustment request. From an evidentiary perspective, at summary judgment, Stover had the burden to "show that he requested the specific accommodation," as "a plaintiff may not rely on accommodations that he did not request." *Manigan v. Sw. Ohio Reg'l Transit Auth.*, 385 F. App'x 472, 478 n.5 (6th Cir. 2010) (citing *Virts v. Consol. Freightways Corp. of Del.*, 285 F.3d 508, 518 (6th Cir. 2002)). Yet Stover

failed to establish that he requested a scheduling change to receive medical treatment for his condition every eight weeks. And even if we generously interpreted his request for a scheduling change as identical to the one referenced in his complaint, Stover never provided Amazon with supporting material demonstrating the nature of the requested accommodation, even after Amazon explicitly requested that information.

Stover's argument has legal deficiencies, too. Before us, Stover wholly fails to engage with Amazon's arguments on this front. And before the district court, he merely argued that non-LOAA employees poured cold water on his initial accommodation inquiries, justifying his decision to deem the process futile. But Stover cannot dictate the terms of his accommodation or refuse reasonable requests by those designated to evaluate his accommodation inquiries. *See Tchankpa v. Ascena Retail Grp., Inc.*, 951 F.3d 805, 812 (6th Cir. 2020) (noting that both employee and employer are obligated to "engage in an informal, interactive process to negotiate an accommodation" (quotation omitted)). On this record, Amazon was rightfully granted summary judgment on all of Stover's accommodations claims.

*Termination Claims.* Stover's remaining claims allege that Amazon wrongfully discharged him on account of his disability. Claims of this nature can be shown through direct or indirect evidence. *See Hedrick v. W. Rsrv. Care Sys.*, 355 F.3d 444, 452 (6th Cir. 2004). Stover, however, lacks any direct evidence Amazon discriminated against him—that is, evidence that requires "no inferences" to conclude that "discrimination is afoot." *Tennial v. United Parcel Serv., Inc.,* 840 F.3d 292, 302 (6th Cir. 2016). Stover suggested to the district court that he was terminated "because of" a "lack of accommodation"—presumably taking too many bathroom breaks. But he cited nothing in the record to support that proposition.

Still, Stover's reliance on a short temporal proximity between his last discussion with Nemeth about his break times and his ultimate termination may amount to circumstantial evidence of discrimination. *See, e.g.*, *Asmo v. Keane, Inc.*, 471 F.3d 588, 598 (6th Cir. 2006). And circumstantial evidence still counts in this setting. Under the familiar *McDonnell-Douglas* framework, Stover can rely on circumstantial evidence at summary judgment to show he was discriminated against because of his disability. *Morrissey v. Laurel Health Care Co.*, 946 F.3d 292, 298 (6th Cir. 2019). But Amazon, in turn, has the opportunity to rebut that evidence by offering a legitimate explanation for why it discharged Stover. *Id*. If it does, the burden shifts back to Stover to show Amazon's proffered reasons were pretextual in that they (1) had no basis in fact; (2) did not actually motivate Amazon; or (3) were insufficient to justify Amazon's action. *Babb v. Maryville Anesthesiologists P.C.*, 942 F.3d 308, 320 (6th Cir. 2019).

Even assuming that he could establish a prima facie case, Amazon proffered a perfectly valid reason for terminating Stover—his abuse of his aux status. As revealed in Stover's termination papers, he was fired because of "egregious phone auxing," through which Stover manipulated his status to sign off of work early to avoid customer calls. Such improprieties are a quintessential legitimate reason to terminate an employee. *See, e.g.*, *Bogart v. Univ. of Ky.*, 766 F. App'x 291, 299 (6th Cir. 2019); *Hale v. Mercy Health Partners*, 617 F. App'x 395, 400 (6th Cir. 2015).

And nothing in the record suggests pretext. Nemeth, Stover's direct supervisor who set the termination decision in motion, testified as to her belief in the reasons for terminating Stover. Under the settled "honest belief rule," so long as Amazon made a "reasonably informed and considered decision" based on "particularized facts," no reasonable juror could infer that its reason for firing Stover was pretextual. *Babb*, 942 F.3d at 322 (citations omitted). Nemeth's belief,

moreover, is in accord with the unrebutted evidence, including Stover's contemporary admissions, indicating that he engaged in the aux abuse. What is more, his misconduct mirrored other recent behavior, such as his poor regard for the customers he served and his general lack of judgment (including his less than tactful emails). Stover's bathroom needs, in other words, were the least of Amazon's problems with him.

True, Stover did, on one occasion, tell Nemeth that his Crohn's disease was the cause of his excessive breaks. But that was one cause among many, including food poisoning and a mischievous computer. There is no evidence to suggest that Stover's Crohn's disease motivated Nemeth to initiate Stover's separation any more than any other reason Stover provided for his misconduct. More to the point, far from showcasing a discriminatory intent, Nemeth, in her discussion with Stover about his excessive breaks, *encouraged* Stover to seek an ADA accommodation, hardly the makings of a discrimination claim. Stover, for the most part, viewed his dispute with Nemeth as personal in nature, not one motivated by some sort of hidden discriminatory intent. In short, no reasonable jury could conclude that Amazon's proffered reasons for cutting ties with Stover were pretextual. As a result, the district court was correct to grant summary judgment on Stover's remaining claims.

**IV.**

We affirm the judgment of the district court.